[Civ. No. 4316.  First Appellate District, Division Two.—September 29, 1922.]

In the Matter of the Accusation of BAR ASSOCIATION OF SAN FRANCISCO, Accusant, v. ARTHUR M. DE VALL, Accused.

[1] ATTORNEY AT LAW—REPREHENSIBLE CONDUCT — SUGGESTION OF ALTERATION OF WILL—DISBARMENT.—An attorney at law who believing the presence of certain printed matter on a paper purporting to be a will invalidated the will and, so believing, suggested the erasure of such printed matter before the paper was offered for probate, was guilty of reprehensible conduct warranting his disbarment under subdivision 4 of section 282 and subdivision 2 of section 287 of the Code of Civil Procedure.

PROCEEDING for disbarment of an attorney at law. Accused suspended.

The facts are stated in the opinion of the court.

Harold E. Haven for Accusant.

Arthur M. De Vall, *in pro. per.,* for Accused.

STURTEVANT, J.—This is an original proceeding brought in this court by the Bar Association of San Francisco against the accused to obtain a judgment of disbarment. It is the claim of the accusant that the accused should be disbarred under subdivision 5 of section 287 of the Code of Civil Procedure. As sustaining that claim the accusant contends that the accused did advise the altering of a paper purporting to be the will of George A. Holland, deceased. The charges against the accused are pleaded in two counts and no question has been presented as to the sufficiency of the pleadings.

George A. Holland, formerly of Boston, Massachusetts, resided in San Francisco for a period of time prior to December, 1920. About Christmas of that year he died and at least some of his effects were so located that one W. B. Potter had access thereto. Thereafter the said W. B. Potter informed the accused of the facts regarding the death of the decedent and the accused undertook to locate the heirs of the deceased. Later he took such steps that at least some of the heirs were located, and some of the correspondence between the accused and the heirs was introduced in evidence. The purported will was produced in court and exhibited to the court and an enlarged photographic copy was filed as an exhibit. Three exemplars of the writing of the deceased were produced and filed. The purported will is very short and is in words and figures as follows, to wit:

"The Boston Five Cents Savi..gs Bank,
    "Boston,—Mass.

                                          "Nov. 8th 1920

"please notify William J. McCurdy if anything Should happen me  I feel as though I haven't long to stay  William McCurdy Emma McCurdy Lillian & Elanor are my cousins.  I wish them to have all I leave  they are poor industerious people and need all the assistance possible

                    "GEORGE A. HOLLAND
                    "formerly of Boston Mass."

The words, "The Boston Five Cents Saving Bank, Boston,—Mass." are printed in the upper left-hand corner and

the printing is in large block type. It is the contention of the accusant that the accused either wrote or caused to be written on the purported will, before the paper was offered for probate, the words and figures, "Nov. 8th 1920." The proof offered in support of this contention is as follows: The letter admitted to be signed by the accused and dated July 18, 1921, contains statements among others as follows:. "I have decided to tell you now the full details in regard to the property, or rather the money. I am pledging you however to absolute secrecy, as it will help no one else, and might prove a loss to you and those George wanted to benefit by the little he had. . . . Now George A. Holland left an imperfect will. There was a technical omission that made it absolutely void. Although it was as clear as day that he wanted you, William, Lillian and Eleanor to have his money. The paper stated so in so many words. I will send you a copy of it. On another paper also he left words to the same effect although this paper was more imperfect than the other. Fortunately these papers came to my hand. My first move was to find you and see if you and your immediate relatives would get this money under the intestate laws. That was the reason of not wanting to have relatives who were not friendly know about the matter, and also in getting the details as to relatives. When I got all these details I found that this money would not all go where George wanted it to go, and there was a possibility that none of it would, and if any of it did, it would be very little. I then took it upon myself, with the aid of a friend of George's to perfect that will. That was done. A good will perfected, planted in the trunk where it was found, and is now in the hands of the Public Administrator and will be found to be a good will." On the trial in this court an expert was called who testified that the date was not in the handwriting of the decedent, but he did not testify that it was in the handwriting of the accused. The accused took the stand and testified that he did not write the date nor authorize the writing of the date, that he did not see it written, and never saw the will until it was offered in this court. He further testified that at one time he telephoned Mr. Potter that the public administrator would call on Mr. Potter for the effects of the decedent; that in the course

of that conversation Mr. Potter informed the accused that he had found a paper (the will) and read the contents over the telephone—"We had a talk about it and he said there was some printing—the name of a bank on it. I says, 'Can't you erase it?' and he says, 'Yes,' and I says, 'If I was in your place I would go ahead and do it.' That was our complete conversation and only conversation in regard to that." As to whether the date, "Nov. 8th, 1920" was inserted in the will by the accused or by someone else acting on the suggestion of the accused, the foregoing testimony is all that was adduced on the subject. It does not show conclusively to our minds that the accused either inserted the date or caused it to be inserted.

[1] The attorney for the accusant has cited to this court certain authorities to the effect that the printed matter, "The Boston Five Cents Savings Bank, Boston,—Mass.," on the face of the will does not violate the provisions of section 1277 of the Civil Code. The accused has not cited to us any authorities on the subject. However, it is proved by all of the testimony, and, indeed, is admitted by the accused, that he believed the presence of such printed matter invalidated the will; and, so believing, he suggested to Mr. Potter that Mr. Potter erase the printed matter. Such conduct was reprehensible. Section 282 of the Code of Civil Procedure provides: "It is the duty of an attorney and counselor: . . . 4. . . . never seek to mislead the judge . . . by an artifice . . . of fact . . . ": and it is provided by section 287 of the same code: "An attorney and counselor may be removed or suspended . . . by any district court of appeal . . . for either of the following causes, arising after his admission to practice: . . . 2. . . . violation . . . of his duties as such attorney and counselor; . . . " The admitted facts clearly sustain the second count pleaded in the accusation on file against the accused. It remains for us to determine what should be the punishment. The acts of commission by the accused were done about the middle of July, 1921; the matter was taken up by the Bar Association on the 24th of January, 1922, at which time a hearing was had. The association filed in this court its accusation on June 6, 1922; the accused entered no dilatory pleas of any kind or nature, but appeared for a hearing and the same was had on June 29, 1922. At the hearing

the accused appeared *in propria persona* and without objection submitted himself as a witness against himself and entered no objections of any kind or nature and made no dilatory motions. Bearing on whether the accused would hereafter engage in similar practice, the accused stated when testifying before this court, "So far as doing it again, I would not do it again in that case or any other."

Considering all of these matters together and as bearing on the punishment, we think that the accused should be suspended from the practice of the law until the first day of January, 1923, and it is so ordered.

Nourse, J., and Langdon, P. J., concurred.